A06A1588. HARKINS v. THE STATE.
(636 SE2d 698)

BERNES, Judge.

A Jackson County jury convicted Rebecca Gene Harkins of several drug-related offenses, including two counts of possession of drugs with intent to distribute within 1,000 feet of a school (OCGA § 16-13-32.4 (a)). On appeal from the denial of her motion for new trial, she contends that the trial court should have granted her motion for a directed verdict of acquittal and charged the jury on the affirmative defense set forth in OCGA § 16-13-32.4 (g). We find no error and affirm.

1. Appellant contends that the trial court should have granted her motion for directed verdict of acquittal on two counts of violating OCGA § 16-13-32.4 (a). That statute provides in part that "[i]t shall be unlawful for any person to . . . possess with intent to distribute a controlled substance or marijuana in, on, or within 1,000 feet of any real property owned by or leased to any public or private elementary school." Count 3 of the indictment averred that on or about January 31, 2003, appellant violated OCGA § 16-13-32.4 (a) in that she did possess with intent to distribute methamphetamine, a controlled substance, within 1,000 feet of an elementary school. Count 6 averred that appellant violated the same statute during the same time period in that she did possess with intent to distribute marijuana within 1,000 feet of an elementary school.

"The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction." *Shelton v. State,* 279 Ga. 161, 162 (3) (611 SE2d 11) (2005). See *Jackson v. Virginia,* 443 U. S. 307 (99

SC 2781, 61 LE2d 560) (1979). As such, we must view the evidence in the light most favorable to the verdict, and we neither weigh the evidence nor determine witness credibility. *Wilson v. State*, 261 Ga. App. 576 (583 SE2d 243) (2003).

Viewed in this light, the evidence adduced at trial shows that appellant, her boyfriend, and their 19-year-old male friend lived together in a rented home across the street from an elementary school in Jackson County. Measurements later taken by a narcotics investigator established that the elementary school was only 54 feet from the home.

Appellant rented the home for $100 per week but allowed her boyfriend and their teenage friend to stay there. According to appellant's landlord, there were numerous different cars always coming and going from the rented home.

On the morning of January 31, 2003, law enforcement officers with the Jackson County Sheriff's Office executed a search warrant at the rented home based upon suspected drug-related activity. The warrant authorized them to search for methamphetamine and marijuana. Upon entry, the officers quickly secured appellant, her boyfriend, and their teenage friend. The officers found $103 on appellant's person, and $1,059 in cash and a large plastic bag containing methamphetamine in her boyfriend's pants.

The officers commenced their search of the home. In an armoire in the master bedroom, they found a large bag of marijuana and a zippered pouch containing a needle, spoons, empty plastic baggies, and several small plastic baggies of methamphetamine. A box of plastic baggies, a "palm scale," a digital scale, a set of metal scales, and a "crushing bowl" were in plain view on the nightstand next to the bed. Sitting on the dresser in the bedroom was a large red vase, and inside were four large bags of methamphetamine with the weights written on the outside. A small refrigerator by the bed contained close to a pound of marijuana, and hypodermic needles were found on the bedroom floor and behind a picture on the bedroom wall.

In the hallway outside the master bedroom, the officers found a tin can of marijuana packaged in plastic baggies. Each of the baggies contained approximately the same amount of marijuana. A search of the living room revealed a set of small digital scales, a smoking pipe, and a spiral notebook containing a list of names, phone numbers, and dollar amounts next to each name. Additionally, the officers found a smoking pipe and digital scales in a car in the driveway that belonged to appellant's boyfriend.

After appellant's boyfriend was *Mirandized*, the officers asked him why there was so much "dope" in the home. He told the officers that they "just showed up at the right time." Appellant's boyfriend also told an officer that he was unemployed and needed to make

money, and he conceded that "nobody else could claim the methamphetamine in his pocket because it was in his pocket."

After being *Mirandized*, appellant told the law enforcement officers that she was a drug user. Appellant stated that she was aware that there was some methamphetamine inside the home and that she herself had a couple of "eight-balls" weighing approximately an eighth of an ounce in the home. However, she expressed surprise at how much methamphetamine had been seized by the police. Appellant further admitted knowing that there was a large amount of marijuana in the home.

The substances seized from appellant's home were secured in an evidence locker at the sheriff's office and then transported to the Georgia State Crime Laboratory in Atlanta for analysis. A forensic chemist conducted three laboratory tests that confirmed that the seized substances were methamphetamine and marijuana. After the laboratory tests were completed, a narcotics investigator separately tested smaller quantities found in the armoire and hallway, which proved positive for marijuana. In sum, testing revealed that approximately 410 grams of methamphetamine (with a street value of $40,800) and 400 grams of marijuana (with a street value of at least $2,400) had been seized from appellant's home.

The teenager who lived with appellant and her boyfriend subsequently agreed to cooperate with the state and testify at trial. According to the teenager, appellant's boyfriend had been his drug dealer since he was 15 years old, and he had contracted Hepatitis C as a result of his drug use. He was living with appellant and her boyfriend because he had gotten "too strung out to keep working" and had lost his job. The teenager testified at trial that on an average day, more than ten people would come by appellant's home to purchase drugs. He stated that drugs were sold out of the master bedroom, and that appellant usually would be in there with her boyfriend when the selling occurred. Furthermore, the teenager had observed appellant herself selling drugs at the home.

This evidence — which was introduced at trial through the testimony of appellant's landlord, the law enforcement officers involved in the search of the rented home, the evidence custodian, the forensic chemist who tested the drugs for the crime lab, and the teenager who lived in the home — clearly was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the charged offenses. *Jackson*, 443 U. S. 307. See, e.g., *McKay v. State*, 234 Ga. App. 556, 557-558 (1) (507 SE2d 484) (1998).

Relying on the affirmative defense set forth in OCGA § 16-13-32.4 (g), appellant nevertheless contends that the evidence supported a "reasonable hypothesis of innocence" because the evidence showed

that "the prohibited conduct took place entirely within a private residence." Appellant's argument is misguided for two reasons.

First, "[t]he 'reasonable hypothesis' rule relied upon by [appellant], codified in OCGA § 24-4-6, applies only when the evidence against the accused was *entirely* circumstantial." (Emphasis in original.) *Sullivan v. State*, 277 Ga. App. 738, 741 (627 SE2d 437) (2006). The admissions of appellant and her boyfriend, as well as the testimony of the teenager who lived with appellant and her boyfriend, provided direct evidence of appellant's guilt, and so the "reasonable hypothesis" rule is not applicable in the instant case.

Second, even assuming that the evidence established that the prohibited conduct took place only within a private residence, that fact, standing alone, is not grounds for acquittal. OCGA § 16-13-32.4 (g) provides that:

> It is an affirmative defense to prosecution for a violation of [OCGA § 16-13-32.4 (a)] that the prohibited conduct took place entirely within a private residence, that no person 17 years of age or younger was present in such private residence at any time during the commission of the offense, *and* that the prohibited conduct was not carried on for purposes of financial gain.

(Emphasis supplied.) The plain language of the statute clearly requires that three separate conditions be met before the affirmative defense applies, including that the prohibited conduct not have been carried out for purposes of financial gain. Here, the state presented evidence that appellant and her boyfriend were selling drugs in the home, and, therefore, presented evidence that the third condition had not been satisfied. Appellant thus was not entitled to a directed verdict of acquittal pursuant to OCGA § 16-13-32.4 (g).

2. Appellant further argues that the trial court erred by failing to charge the jury on the affirmative defense set forth in OCGA § 16-13-32.4 (g). Significantly, however, the trial court need not charge the jury on an affirmative defense if there is no evidence to support it. See *Code v. State*, 255 Ga. App. 432, 434 (4) (565 SE2d 477) (2002); *Cheesman v. State*, 230 Ga. App. 525, 528-529 (6) (497 SE2d 40) (1998). As noted in Division 1, the affirmative defense at issue requires that the prohibited conduct not have been carried out for purposes of financial gain. At trial, appellant elected not to testify, and the only eyewitness, the teenager who lived with appellant, testified that he observed appellant and her boyfriend selling drugs from the residence. Furthermore, in her statement made to police, appellant never denied that drugs were being sold at the residence by her boyfriend, but instead simply stated that she was a user and was

unaware of the amount of drugs being stashed at her home. Finally, it is clear from the trial transcript that appellant's theory of the case was that her boyfriend ran the "whole enterprise" and sold drugs from the home, while she and her teenage friend were mere users supplied by her boyfriend. Thus, appellant never denied that prohibited conduct for financial gain was occurring at her residence, only that she was not a party to it. Under these circumstances, where there was no evidentiary foundation for asserting the affirmative defense, a jury charge on the defense was not required. The trial court committed no error.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 11, 2006.

*Mary Erickson*, for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.