A09A0633. GRESHAM v. THE STATE.
(679 SE2d 344)

MIKELL, Judge.

Robert Jerome Gresham and co-defendant Johnny Leon Flanigan were indicted for aggravated battery[1] (Count 1), nine counts of aggravated assault[2] (Counts 2 through 10), and ten counts of

---

[1] OCGA § 16-5-24.

[2] OCGA § 16-5-21.

possession of a firearm during the commission of a felony[3] (Counts 11 through 20), based on a shooting incident which occurred in Athens on November 29, 2004. Gresham was tried separately[4] before a jury and was found guilty on all counts. The trial court denied his motion for new trial, and Gresham appeals, challenging the sufficiency of the evidence and asserting other errors. Because we conclude that the evidence adduced at trial was insufficient to support his conviction, we reverse the judgment against him.

> On appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[5]

Viewing the evidence in a light most favorable to the verdict, the record reflects that shortly before 6:20 p.m. on November 29, 2004, an unidentified assailant or assailants began firing on Shamekia Williams's home on Ruth Street near the intersection with Lake Road in Athens. A number of individuals were at Williams's home at the time of the shooting, one of whom, Wyteeka Hancock, was struck in the side by a bullet while standing on Williams's front porch.

Earlier that afternoon, at an apartment at the Rolling Ridge Apartments in Athens, Gresham threatened to "sneaky shoot" Lamans Faust and told him, "I'm going to sneak and shoot you. You're going to die tonight." Gresham's threats against Faust took place shortly after Faust (among others) punched Gresham when Gresham got into a physical altercation with Williams, who was his former, and Faust's current, girlfriend. On March 31, 2005, Gresham pled guilty to a charge of making terroristic threats against Faust.

After the altercation, Faust, Williams and several others left the Rolling Ridge apartment in Williams's car and drove to Williams's home on Ruth Street, where a number of people were gathered. Gresham stayed behind at Ruth Street and called Flanigan to tell him that he had just "gotten jumped." Juakee Gresham, Gresham's brother, later told police that Flanigan asked Gresham where "those people" were, and Gresham replied, "I don't know, I'm fixing to ride, follow me." After meeting up with Flanigan, Gresham drove off in

---

[3] OCGA § 16-11-106.

[4] Flanigan pled guilty to one count of aggravated assault on May 17, 2007.

[5] (Citation omitted.) *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Accord *Goodwin v. State*, 294 Ga. App. 666, 667 (669 SE2d 704) (2008).

his white Cutlass, along with a passenger, Aliantonio Watkins. Flanigan followed in his truck, Juakee riding along with him.

Shortly after they arrived at Ruth Street, both Faust and Williams observed Gresham, in his Cutlass, with Flanigan following in his truck, drive past Williams's home, where Williams's car was parked. Neither vehicle stopped at the Ruth Street residence, however, nor did the occupants of either vehicle say anything or make any gesture while passing by Williams's home. After that, the vehicles were not seen again in the vicinity of the Ruth Street home that evening.

Juakee told the police that after they drove by Ruth Street, they continued on to the Knollwood Apartments, where Flanigan's aunt lived. After they arrived at the Knollwood apartment, however, Gresham, Flanigan, and Watkins left again in Gresham's car, without Juakee and without telling Juakee where they were going. Flanigan returned about an hour later, without Gresham. There was no testimony that Flanigan returned in Gresham's car.

Dexter Williams, Shamekia Williams's brother, was outside the Williams home when the shooting started. He testified at trial that he saw at a nearby intersection "two males with black hoodies on and two pistols firing," although he could not see their faces and could not testify as to their identities. At this intersection and at the Ruth Street house, the police were able to recover a number of shell casings, bullets, and fragments, which were later determined to have been fired from two different 9mm pistols, a Ruger and a Bryco.

After the shooting, the police put out an alert for Gresham's white Cutlass and Flanigan's truck. Approximately 90 minutes after the shooting, police located Gresham's white Cutlass, parked at another apartment complex some distance from the Ruth Street residence. The car was unoccupied and Gresham was not there. The car was impounded and later searched, with Gresham's consent. The search revealed a Crown Royal bag containing 26 .380 bullets, which were incompatible with a 9mm weapon. However, no weapons, 9mm shells, dark clothing, or other evidence linked to the shooting were found.

Shortly thereafter, Flanigan's truck was pulled over by police. Flanigan and Juakee, but not Gresham, were in the truck. Neither Flanigan nor Juakee was wearing a dark "hoodie." A subsequent search of the truck, undertaken with Flanigan's consent, revealed no weapons, 9mm shells, dark clothing, or other evidence related to the shooting.

After Juakee was stopped while riding in Flanigan's truck on the night of the shooting, he was interviewed by Sergeant Sean Potter of the Athens-Clarke County Police Department, who served as lead investigator into the shooting incident. After the interview, Potter

gave Juakee one of his business cards and asked him to have his brother, Gresham, contact him in regard to the shooting incident. Gresham attempted to reach Potter by telephone, but could not get through; they were "playing phone tag," according to Potter. Eventually, Potter was able to reach Gresham and set up a time for an interview. Gresham came to the police station at the appointed time, on December 1, 2004, and gave a statement to police, a recording of which was played for the jury at trial.

A month after the shooting occurred, Flanigan was stopped for a traffic violation while driving his truck. His sole passenger at the time was Petier Davis; Gresham was not present. Flanigan's truck was searched again, and this search revealed a loaded 9mm firearm under the front seat of the truck. This weapon, a 9mm Ruger, matched some of the evidence collected at the scene.

1. In his first four enumerations of error, Gresham asserts that the circumstantial evidence presented at trial was not sufficient to establish beyond a reasonable doubt that he was guilty of the crimes with which he was charged. We agree.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[6] "The proved facts need exclude only *reasonable* hypotheses — not bare possibilities,"[7] and "[q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence."[8] On appellate review, "[w]here the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law."[9]

In the case before us, however, there has been a failure of proof.

While the determination of whether the circumstances are sufficient to exclude every reasonable hypothesis except that of defendant's guilt is usually made by the jury and while we must review the evidence in the light most favorable to the jury verdict, we must not be blinded by that verdict when a reasonable hypothesis of innocence appears

[6] OCGA § 24-4-6. See *Inglett v. State*, 239 Ga. App. 524, 527 (6) (521 SE2d 241) (1999).
[7] (Citation and punctuation omitted; emphasis in original.) *Drammeh v. State*, 285 Ga. App. 545, 547 (1) (646 SE2d 742) (2007).
[8] *Foster v. State*, 273 Ga. 34, 35 (1) (537 SE2d 659) (2000).
[9] (Citation omitted.) Id.

from the evidence or lack thereof, and may declare such as a matter of law.[10]

In the case at bar, the state has not shown that Gresham was anywhere near the scene at the time of the shooting. Although the state presented evidence that the weapon found in Flanigan's truck was connected to the shell casings and other evidence found at the scene after the shooting, the state has not presented evidence connecting this weapon to Gresham. Flanigan's aunt, Kissia Roberson, testified at trial that on November 26, 2004, three days before the Ruth Street shooting, she saw Juakee hand Gresham a gun, but she could not identify the type of gun involved. This testimony, introduced as a similar transaction, does not connect Gresham with the Ruth Street shooting on November 29, 2004.[11]

The state argues that Gresham's conviction should be upheld on the ground that he was a party to the crime. Under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." Under subsection (b) of that statute, "[a] person is concerned in the commission of a crime only if he: . . . (3) [i]ntentionally aids or abets in the commission of the crime; or (4) [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." As our Supreme Court has recognized, "[m]ere presence at the scene of a crime and mere approval of the criminal act are not sufficient evidence to establish that the defendant was a party to the crime."[12]

The evidence in this case showed that Gresham had a fight earlier in the afternoon at a different location with several of the people who were at the scene of the shooting; that Gresham had motive and intent to do harm to Faust, based on the fight at the Rolling Ridge apartment and on Gresham's subsequent threats against Faust; that Gresham was upset and that he told Flanigan, "I'm fixing to ride, follow me"; that he and Flanigan drove by Williams's house *before* the shooting occurred; and that Gresham's brother gave him a gun at least three days before the crime occurred.

---

[10] (Citations omitted.) *Brooks v. State*, 206 Ga. App. 485, 486-487 (1) (425 SE2d 911) (1992) (circumstances insufficient to show that defendant had constructive possession of contraband found in cactus bush near where defendant was standing, even though defendant was dressed in manner common to street drug dealers).

[11] See *Stephens v. State*, 258 Ga. App. 774, 777-778 (1) (575 SE2d 661) (2002) (evidence of two similar transactions for possession of cocaine, while relevant to prove bent of mind or course of conduct, cannot be used as direct evidence to prove crime of possession).

[12] (Citation omitted.) *Hill v. State*, 281 Ga. 795, 797 (1) (a) (642 SE2d 64) (2007) (conviction upheld where evidence showed that defendant was willingly present when victim was killed by accomplice in alley and that defendant later bragged about his participation in crime).

The state has failed to adduce evidence, however, that Gresham intentionally aided, abetted, or encouraged the commission of the crimes of which he was convicted. Thus, "[w]hat the evidence produced by the [s]tate did *not* show were the essential links between [Gresham's] proven behavior and the crimes charged."[13]

We recognize that the shooting incident that occurred in this case was a heinous crime, which evinced a callous disregard for life. Further, we recognize that Gresham's conduct before the crime occurred placed him under grave suspicion. Nonetheless, we are constrained to conclude that the evidence adduced against Gresham does not suffice to support his conviction under the standard of *Jackson v. Virginia.*[14]

2. In light of our holding in Division 1, we need not address Gresham's remaining enumerations of error.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 4, 2009 —
RECONSIDERATION DENIED MAY 29, 2009.

*Daniel J. Cahill, Jr.*, for appellant.
*Kenneth W. Mauldin, District Attorney, James V. Chafin, Assistant District Attorney*, for appellee.

[13] (Emphasis in original.) *Clyde v. State*, 276 Ga. 839 (584 SE2d 253) (2003) (evidence that defendant purchased murder weapons was insufficient to show that defendant was party to crime or conspirator, where no evidence showed that defendant supplied the weapons knowingly or with the intent to kill).
[14] Supra.