## A11A1902. EMERSON v. THE STATE.
### (726 SE2d 600)

ADAMS, Judge.

Omyri Emerson appeals the trial court's denial of his motion for new trial after a jury found him guilty of aggravated assault, unlawful possession of a firearm, obstruction of an officer and carrying a concealed weapon.[1] We affirm for the reasons set forth below.

Viewed in the light most favorable to the verdict,[2] the evidence showed that in the early morning hours of January 3, 2009, Emerson told his three co-defendants that he "wanted to go out and look for somebody to rob" because he was mad that he had lost money gambling. Emerson and the others got into a gold Lexus belonging to a friend and traveled to the intersection of Chamblee-Dunwoody Road and West Hospital Road where they saw Jesus Mendez riding his bike to work. Mendez was wearing a black backpack containing his lunch and some prescription medicine. The car pulled up next to Mendez, striking him and causing him to fall over. All four men exited the car, and one of them held the "long part" of a gun to Mendez's head while two others tried to turn him over and go through his pockets. Chamblee Police Officer Nick Nixon, who was patrolling in the area, saw the gold Lexus stopped in the middle of the road and approached the scene. When the men saw the police car, they returned to the Lexus, with one man carrying the backpack and Emerson carrying a shotgun, which he placed in the front passenger section of the car.

As Nixon approached, the Lexus drove off "at a high rate of speed." Nixon saw Mendez down in the intersection along with his bike, but when Mendez saw the police car, he started pointing back at the Lexus and screaming. Nixon then made a U-turn and followed the Lexus, with his blue lights and siren activated. During the short, high-speed chase that ensued, the Lexus hydroplaned off the road and crashed in the adjacent woodline. Emerson and the other men then jumped out of the car and ran, even though police instructed

---

[1] The jury acquitted Emerson of charges of armed robbery and illegal use of a specific weapon during a crime.

[2] "On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence. . . ." (Footnote omitted.) *Brown v. State*, 274 Ga. App. 302 (1) (617 SE2d 227) (2005).

them to stop. Nixon and other officers who had joined in the car chase pursued the men, and Emerson and the others were eventually apprehended. Police located Mendez's backpack in the Lexus, along with several prescription pill bottles with Mendez's name on them. A sawed-off shotgun was found laying across the front passenger seat. When Emerson was searched after his arrest, the police also found a set of brass knuckles in his right rear pants pocket.

1. Emerson argues that the trial court erred in failing to grant his motion for a mistrial after the trial court gave supplemental jury instructions he claims rose to the level of judicial coercion. "Whether a verdict was reached as the result of coercion depends on the totality of the circumstances." *Sears v. State*, 270 Ga. 834, 837 (1) (514 SE2d 426) (1999). Accordingly, we must determine whether, considering all the circumstances, the charge was "coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." *McMillan v. State*, 253 Ga. 520, 523 (4) (322 SE2d 278) (1984). An examination of the totality of circumstances in this case leads us to the conclusion that the verdict in this case was not coerced by the trial court.

Because Emerson's trial counsel raised repeated, cumulative objections and motions for mistrial to various aspects of the jury charge, we must examine the course of the trial in some detail. The record reflects that during the first afternoon of its deliberations, the jury sent the trial judge two separate requests for further instruction. The trial court responded to the first request by re-reading a portion of the earlier charge. Emerson's counsel took exception, arguing that re-reading a portion of the charge unduly and prejudicially emphasized that aspect of the law. He moved for a mistrial based on the re-charge, but the trial court denied the motion. After the second question, the trial court instructed the jury only that they had the law, the indictment and the evidence and they were to decide the case on the law and evidence presented at trial. Emerson's counsel objected to the trial court's wording of this instruction.[3]

At that point, the trial judge decided to send the jury home because he did not give them "advance notice about staying beyond what I call daycare or childcare hours." He asked the jurors to make arrangements to stay late for the next two days "if necessary." The judge then instructed the jurors as to the schedule going forward,

---

[3] Emerson does not raise any argument regarding either of these supplemental charges on appeal.

with details as to starting and ending times, as follows:

> We're going to start at eight-thirty tomorrow. Lunch is going to be between twelve and one. Dinner will be tomorrow between six and seven. The way I operate, the day doesn't end until midnight. Friday, we'll go at eight-thirty on Friday. Lunch will be from twelve to one on Friday. Dinner will be from six to seven on Friday. We will do Saturday and Sunday if necessary. The schedule on Saturday will be very similar. We will start at eight-thirty on Saturday and we will convene on Sunday at eight-thirty if needed. Now, with that instruction, you have tonight to make whatever arrangements you need to make. . . .

After the jury was excused, the trial court asked counsel for any exceptions based upon the instructions he had just given. The State raised no objection, and Emerson's counsel "incorporated" the arguments and objections he had made earlier, re-asserting his motion for a mistrial. The trial court again denied the motion. Emerson's counsel raised no objection, however, to the trial court's instructions regarding scheduling.

But the next day Emerson filed a written motion for a mistrial based upon these scheduling instructions, arguing that the charge had the effect of telling the jury that they had to stay until they reached a verdict, which was "tantamount to charging that even in the event of any conscientious and irreconcilable difference of opinion between the jurors, one or more jurors would be required to surrender his view in order to reach a verdict."

As an alternative to a mistrial, Emerson requested curative instructions to clarify that the trial court was not threatening to confine the jurors until they reached a verdict. The trial judge indicated that he would give a curative instruction, stating "when I do bring them out and give them their additional charges, I will let them know in no uncertain terms they are under no obligation to — strike that — they have to reach a verdict. I mean, obviously, I think that's the intent of the law." The trial judge then stated for the appellate record that he had outlined the schedule for the jurors, as a matter of "basic courtesy," to allow them to make any arrangements they need to make if the deliberations extended past regular working hours. Emerson's counsel raised no further objection to the trial court's statement regarding the law or the scheduling instruction he had given. The judge and counsel then turned to a discussion of the jury's third request for additional instruction, and Emerson's counsel excepted to the trial judge's statement of what he intended to charge the jury in response to that request.

When the jury returned to the courtroom, the trial court gave the following curative instructions regarding the prior day's scheduling notice:

> [J]ust to give some other clarity, I just want to make sure — the purpose of giving you a timeframe on things [was] just for you to arrange your, for lack of a better term, your personal affairs so you would know where you would be. Not to necessarily — you can make any decision that you make. But I just wanted to give you some timeframe, because some of you may have child care issues and arrangements so that you could make those. That's the only purpose of that. With that said — and also, let me just say any decision that you make is purely your decision as a jury.

And as discussed more thoroughly in Division 2, infra, the court also gave the jury the supplemental instruction in response to the third question, as to which Emerson's counsel had previously excepted. Afterward, the trial judge asked counsel for any exceptions. The State had none, but Emerson's counsel replied, "Judge, just incorporating by reference all my other objections, I'll for the record move for mistrial at this point, for the same reasons I've already put on the record."[4] The trial court again denied the motion. The jurors continued deliberating until the judge sent them home for the evening.[5] The jury announced the verdict after returning the next day, and each juror affirmed the verdict when the jury was polled.

In denying Emerson's motion for new trial on this ground, the trial court found that Emerson waived any issue regarding the scheduling instructions by failing to raise a contemporaneous objection. Under OCGA § 17-8-58, Emerson was required to raise his objection before the jury retired to deliberate, and the failure to do so

---

[4] We note that Emerson's counsel never objected to the trial court's curative instructions. And at this point, Emerson's counsel previously had raised motions for mistrial on at least four occasions, so it is unclear what he intended as the basis for this motion for mistrial. It is unclear, therefore, whether he renewed his written motion for mistrial based upon the scheduling instructions and thus whether he waived appellate review of the issue on this ground. See *Reese v. State*, 289 Ga. 446, 449 (4) (a) (711 SE2d 717) (2011). But we need not reach this issue because we find no error in the scheduling charge.

[5] In the interim, the jurors had sent the judge a note stating that they had made sufficient progress, but due to "the gravity of the charges," they wanted to go home for the night to allow them "ample time to renegotiate and solidify their thoughts." The trial court became concerned that the jury's use of the phrase "gravity of the charges" meant they were impermissibly considering the issue of punishment. He then charged them that their job was to determine guilt or innocence, not punishment, and sent them back to deliberate a while longer. Emerson once again objected and once again moved for a mistrial on "the grounds aforementioned." His motion was again denied. Emerson raises no objection to this charge on appeal.

precludes appellate review of the issue unless the charge constitutes plain error. Here, the jury arrived the next day, and presumably began deliberations, one hour before the lawyers were scheduled to arrive and court began for the day, so the written motion for mistrial presumably was made after deliberations had already begun.

But pretermitting whether Emerson waived this argument by failing to raise a timely objection, we find no error, plain or otherwise, in the trial court's scheduling charge. The charge merely set out the court's time schedule for conducting jury deliberations, so the jurors could plan ahead. The charge made clear that the schedule would be followed only if necessary, and the trial judge further clarified in the curative instruction that he in no way intended to influence the jurors' deliberations. Thus,

> [n]othing in the charge constituted a form of "verdict urging," and the charge contained no express or implied threats to the jury either that they might be held captive for days until a verdict was reached or that a mistrial might be forthcoming if a verdict was not promptly announced. The trial court exercises wide discretion in controlling and regulating the business of the court, and appellate courts should never interfere with the exercise of this discretion unless it is plainly apparent that wrong has resulted from the abuse.

(Citation omitted.) *Williams v. State*, 205 Ga. App. 445, 447 (3) (422 SE2d 309) (1992). See also *Williams v. State*, 217 Ga. App. 347, 348 (1) (457 SE2d 257) (1995) (jury charge stating that "[y]ou are going to get down to some serious deliberations tomorrow, and you're going to resolve this case. Okay? I don't have a thing to do tomorrow. I don't have a thing to do Saturday. I don't have a thing to do Sunday, and I'll be back up here Monday having court again. Okay?" found not to be coercive under totality of circumstances); *Dean v. State*, 205 Ga. App. 512 (422 SE2d 569) (1992) (statement that "we can't stay much longer . . . we can give you until 5:00 o'clock" held not error where trial judge also indicated jury could reconvene the following day). After the trial court announced the schedule, the jury returned the next day and deliberated for a full day, before entering a verdict the following day that acquitted Emerson of two of the six charges. We find nothing under these circumstances to support a finding of coercion or abuse.

Emerson argues, however, that the trial court's statement to counsel outside the presence of the jury that the "intent of the law" was that the jurors were required to reach a verdict showed the coercive nature of his scheduling charge given the day before. But even if that statement reflects a belief on the part of the trial judge

that the jury had to reach a verdict, nothing in the language of the charge conveyed that to the jurors. Compare *Jenkins v. United States*, 380 U. S. 445 (85 SC 1059, 13 LE2d 957) (1965) (charge that jury "ha[d] to reach a verdict in this case" improperly coercive); *McMillan v. State*, 253 Ga. at 523 (4) (judge's statement that "I feel like there is enough evidence in this case for you to reach a verdict" found to be coercive). Moreover, at no point did the jury indicate that it was deadlocked and unable to reach a verdict. Accordingly, we find no basis for reversal on this ground.

2. Emerson also contends that the trial court erred in instructing the jury on alternative ways that the State could prove its case "after deliberations had started, after questions had been asked by the jury and after the jury was subjected to judicial coercion." He asserts that the trial court's supplemental charge to the jury in response to their second question "allowed them to consider ways for the crimes to be completed that were not charged in the indictment." We find no merit to this argument for multiple reasons: (1) we have found that no judicial coercion occurred; (2) Emerson's argument fails to accurately reflect the events at trial; (3) Emerson failed to raise the objection below that he now raises on appeal; and (4) in any event, the charge was not error because it represents an accurate statement of the law.

With regard to the crimes of aggravated assault, obstruction of an officer and unlawful possession of a firearm, the indictment charged Emerson "individually and as parties concerned in the commission of a crime." Emerson points us to the jury's second question to the judge on the first day of trial, which was as follows:

> In Count Two, according to the wording of the jury instruc-tions, the evidence must show beyond a reasonable doubt that the defendant attempted to . . . however, according to the wording of the indictment, Emerson "individually and as *parties* concerned in the commission of a crime." One asks about just the defendant and one considers as party to. Which do we consider? Please reconcile.

Emerson's counsel proposed that in response the judge charge the jury as follows:

> Ladies and gentlemen of the jury, you have been given the law, the indictment and the evidence in this case. It is your duty to apply the law contained in the entirety of the *charge* of law to the facts *in* evidence in this case *as you deem them to be or not be.*

(Emphasis supplied.) The trial judge gave the jury Emerson's proposed charge, but changed the last sentence to read "It is your duty to apply the law contained in the entirety of the charges of law to the facts *and* evidence *as presented during trial.*" Emerson's counsel objected to the words "as presented during trial" as being too affirmative, which he argued undermined the jury's function to decide what evidence had been presented; he asked to change the language to "evidence presented or not presented" at trial, but the trial court declined the request. Emerson's counsel raised no further objection to the charge.

The next day, the jury requested additional copies of the jury instructions, the indictment and highlighters, and asked the following question, "Isn't there a jury charge that and equals or?" Emerson's counsel had no objection to providing the extra copies and highlighters to the jury, and the trial court did so.

But after giving the curative instruction regarding scheduling discussed in Division 1, the trial court gave the following charge, which Emerson contends was error, in response to the jury's third question:

> When an indictment alleges a crime was committed in more than one way, proof beyond a reasonable doubt that the crime was committed in one of the separate ways alleged is sufficient.

The trial court also went through each count in the indictment instructing the jury as to each count that if they believed the defendant was guilty beyond a reasonable doubt, they should find him guilty of that charge, but if they did not believe the defendant was guilty or if they had a reasonable doubt, it was their duty to acquit him.

Emerson represents on appeal that the contested charge was given in direct response to the jury's second question, but the record demonstrates that the charge, in fact, was given the next day in answer to the jury's third question. The record shows that Emerson's counsel objected to the contested charge on the following grounds: (1) the jury's question "seems to go more to an understanding of conjunctive and disjunctive wording" and not to the level of the charge given; (2) the State did not submit the charge during the charge conference and giving it now would "influence the character" of the jury deliberations; (3) it echoes the State's closing argument and giving such an additional charge "almost is tantamount to the State now getting an extra little closing argument that the Defense has no opportunity to match or rebut"; and (4) it was not a pattern charge. Emerson's

counsel also asked that the trial court add language reiterating that proof must be beyond a reasonable doubt, and the trial court complied. Finally, Emerson's attorney objected to the trial court's further supplemental instruction enumerating each count, because he argued that doing so would be telling the jury that the contested charge applied to each one of the counts even though they did not ask about each count. Emerson does not address any of these arguments on appeal, however, and at no time did Emerson's attorney object on the basis he does raise on appeal, i.e., that the charge would allow the jury to convict Emerson in a way not alleged in the indictment.

Accordingly, Emerson is not entitled to appellate review on this ground unless the charge constituted plain error. OCGA § 17-8-58. In determining whether the charge was plain error, "[t]he proper inquiry . . . is whether the instruction . . . was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceeding." (Citation and punctuation omitted.) *Guajardo v. State*, 290 Ga. 172, 176 (4) (718 SE2d 292) (2011). Moreover, we must consider the charge as a whole in making our determination, id., and, in fact, the trial judge instructed the jury that the supplemental instruction must be considered "in the entirety of the legal instructions I have given you up to this point."

We find that the contested charge was not erroneous as this Court has previously upheld such a charge as reflecting a correct statement of the law. *Johnson v. State*, 212 Ga. App. 190 (1) (441 SE2d 508) (1994). And when considered with the jury charges given as a whole and the evidence in the case, we find no indication that this charge improperly affected the outcome of the proceeding.

3. Emerson argues that the evidence was insufficient to support his conviction for aggravated assault because he asserts that the State presented no evidence identifying the shotgun as the weapon used during the crime as alleged in the indictment. The indictment charged Emerson and his co-defendants with the offense of aggravated assault by making "an assault upon the person of Jesus Mendez with a deadly weapon, to-wit: a shotgun." But we find that the evidence supported Emerson's conviction on the charge as indicted.

One of Emerson's co-defendants, the driver of the car, testified that the four men went out in the car that night because Emerson wanted to rob someone. The evidence showed that all four men got out of the car after they struck Mendez and knocked him down. Mendez testified that one of the four men held the long part of a gun to his head. When the men returned to the car after the incident, Emerson was carrying a shotgun. Emerson got into the front passenger seat with the shotgun and left it there, where it was found after the car

crashed and Emerson fled and was later apprehended. The co-defendant testified that he saw no other weapons in the car, and the police found none.

While it is true that under Georgia law, a defendant may not be convicted solely upon the uncorroborated testimony of an accomplice, OCGA § 24-4-8,

> it is well established that slight evidence of corroboration connecting the defendant to the crime satisfies the corroboration requirement, and that evidence may be entirely circumstantial. . . . The amount of corroborative extraneous evidence necessary to connect the accused with the commission of the offense lies peculiarly within the province of the factfinder.

(Citations and punctuation omitted.) *Daniels v. State*, 306 Ga. App. 577, 581 (1) (703 SE2d 41) (2010). And "evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime." (Punctuation omitted.) *Jones v. State*, 302 Ga. App. 147, 149 (1) (a) (690 SE2d 460) (2010). Although the only evidence of the shotgun at the scene of the crime came from Emerson's co-defendant, other evidence from the victim and the police served to corroborate it. Cf. *Prins v. State*, 246 Ga. App. 585, 586 (1) (539 SE2d 236) (2000) (presence of weapon for weapon possession charge "may be established by circumstantial evidence, and a conviction . . . may be sustained even though the weapon itself was neither seen nor accurately described by the victim. Some physical manifestation of a weapon is required, however, *or some evidence from which the presence of a weapon may be inferred.* [Cit.]") (emphasis in original), disapproved on other grounds, *Miller v. State*, 285 Ga. 285, 287, n. 1 (676 SE2d 173) (2009). And contrary to Emerson's contention, this evidence was sufficient to show more than Emerson's mere presence at the crime scene. See *Harrelson v. State*, 312 Ga. App. 710, 714 (a) (719 SE2d 569) (2011) ("Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime.") (Footnote omitted.); *Green v. State*, 298 Ga. App. 17, 21 (1) (679 SE2d 348) (2009) (accomplice testimony regarding defendant's participation in crime corroborated by loaded pistol found at defendant's feet and black bag used in crime within reach of defendant).

We conclude, therefore, that the evidence was sufficient to authorize the jury's determination that Emerson was guilty beyond a reasonable doubt of aggravated assault.

4. Emerson further argues that insufficient evidence supported his conviction for aggravated assault because the evidence did not exclude every reasonable hypothesis other than his guilt. "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. But that rule is applicable only where the evidence is entirely circumstantial. *Lowe v. State*, 288 Ga. 662, 664 (2) (706 SE2d 449) (2011); *Harkins v. State*, 281 Ga. App. 512, 515 (1) (636 SE2d 698) (2006). Here the State presented direct evidence of Emerson's participation in the events at issue, including his co-defendant's testimony that it was Emerson's idea to commit the robbery and that Emerson carried a shotgun from the scene of the assault. The State also presented direct evidence that Emerson rode away with the weapon near him in the car, and that Emerson fled from police, along with the others, both in the car and on foot. Accordingly, the reasonable hypothesis rule was not applicable in this case. See *Green v. State*, 298 Ga. App. at 21 (2) (accomplice's testimony containing direct evidence of defendant's participation in the crime excluded application of reasonable hypothesis rule).

In any event, "[w]hether the circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of defendant's guilt is a question for the jury unless the verdict is insupportable as a matter of law." (Footnote omitted.) *Carter v. State*, 261 Ga. App. 204, 206 (1) (583 SE2d 126) (2003). And we have already found that the evidence was sufficient to support Emerson's conviction for aggravated assault beyond a reasonable doubt. See also *McCombs v. State*, 306 Ga. App. 64, 66 (2) (701 SE2d 496) (2010) (the mere possibility that an individual other than the defendant committed the crime is not such a "reasonable hypothesis" that must be excluded for circumstantial evidence to authorize a guilty verdict).

5. Emerson's argument that we should reverse because the jury's verdict is inconsistent is without merit. The Supreme Court of Georgia abolished the rule against inconsistent verdicts in criminal cases over 20 years ago, *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986), and this Court is without the power to reinstate it as Emerson urges.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED MARCH 23, 2012.

*Derek M. Wright*, for appellant.

*Robert D. James, Jr., District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.