**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 11, 2013**

# In the Court of Appeals of Georgia

A12A2286. JORDAN v. THE STATE.

RAY, Judge.

Following a jury trial, Anthony Moses Jordan was found guilty of one count of burglary,[1] two counts of armed robbery,[2] and two counts of aggravated assault.[3] He was sentenced as a recidivist to 20 years to serve on the burglary count; to life without parole on the two armed robbery counts; and to 20 years to serve on the two

---

[1] OCGA § 16-7-1 (a). This statute was amended by Ga. L. 2012, p. 899, §3-1, which did not go into effect until July 1, 2012, after the offense occurred in this case. Thus, this case is considered under the prior version of the statute. See Ga. L. 2012, p. 899, § 9-1 (a).

[2] OCGA § 16-8-41 (a).

[3] OCGA § 16-5-21 (a) (2). This statute was amended most recently by Ga. L. 2011, Act 245, § 16, effective May 31, 2011, and earlier by Ga. L. 2010, Act 646, § 1, effective July 1, 2010. Thus, this case is considered under the appropriate prior version of the statute. See Ga. L. 2006, Act 571, § 4, effective July 1, 2006.

aggravated assault counts.[4] Jordan appeals from the denial of his motion for a new trial,[5] contending that the evidence was insufficient to support his convictions, that his trial counsel was ineffective, and that the trial court erred in admitting certain evidence. For the reasons that follow, we affirm.

"On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence."[6] Further, "[w]e neither resolve conflicts in the evidence nor assess witness credibility, but merely determine the legal sufficiency of the evidence."[7] When an appellant challenges the sufficiency of the evidence to uphold his conviction, "the relevant question is whether, after viewing the evidence in the

---

[4] The sentence on one of the aggravated assault counts is consecutive to the armed robbery sentences; the sentence on the other aggravated assault count is consecutive to the first aggravated assault count.

[5] This is Jordan's second appeal before this Court, as his first appeal was dismissed as untimely. The trial court granted his motion for out-of-time appeal, resulting in the instant action.

[6] (Footnote omitted.) *Cothran v. State*, 269 Ga. App. 256, 256 (603 SE2d 762) (2004).

[7] (Footnote omitted.) Id.

2

light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[8]

So viewed, the evidence shows that on June 26, 2008, Patrick Johnson and Cynthia Lewis were asleep at Johnson's home when Lewis was awakened by a loud boom. Lewis saw three or four men wearing masks and pointing guns enter the house. Johnson awoke and grabbed one of the men by the arm, and the man's gun fired into the ceiling. . The men commanded the couple to "give it up, money, jewelry, anything of value" as they began to ransack the house. Johnson and Patrick identified the intruders' race as black and testified that at least two of them had Caribbean or Jamaican accents, while a third spoke with a South Georgia accent. The men threatened to kill Johnson and Lewis. One man fired a bullet into the mattress next to Lewis' head and ordered her to go into the kitchen, telling her that she would be shot if she ran. She escaped and called 911. The intruders stole cash, clothing, and a cell phone, among other items.

The next day, Johnson found some of his clothing and a cell phone (which was not his) outside his back fence. No readable fingerprints were found on the phone. An

---

[8] (Emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

officer prepared a search warrant so that he could download data from the phone. While doing so, he removed the back of the phone in an attempt to find the serial number. He found a piece of paper inside on which there was written an address, a Social Security number, a date of birth, and what appeared to be a credit card number. The Social Security number belonged to Demetris Drayton, who, when contacted by police, asked if the call had "anything to do with that robbery . . . in Moultrie." Drayton met with two police officers and told them that she and her boyfriend, Jordan, had argued over money and that he left the house about 1:00 a.m. on the date of the robbery. When he returned, he threw a wad of money in her face and told her that he had invaded a home in Moultrie. She gave the police boots and pants that she said Jordan wore on the night of the robbery. Drayton also said that she had given the phone to Jordan and that the cell number was his, but that he had told her he lost the phone the previous night. She confirmed that the birth date and credit card number found on the paper inside the phone were hers. She showed police her car and said that Jordan had taken it on the night in question, without permission, and returned it with "fresh damage." She also told police that Jordan worked in the watermelon fields with some Haitians. Despite being so forthcoming with information, when police attempted to record her responses, she refused to answer their questions.

At trial, Drayton testified that she was pregnant with Jordan's child at the time in question, but only learned that he had a child with his wife when she called the wife to tell her that Jordan had been arrested. She denied asking the police if they were contacting her about a crime in Moultrie and disclaimed all knowledge of a crime. She also denied telling the police anything about Jordan's involvement in a robbery. She testified that she told police that Jordan had taken her car the day after robbery occurred and that on the night of the robbery that her mother had driven the car to work. Her mother also testified that she drove the car to work the night of the robbery. Drayton further testified that Jordan told her he lost the phone she had given him, and she denied telling police that Jordan had any contact with anyone with a Caribbean or Haitian accent.

At trial, Jordan, who testified in his own defense, admitted to writing Drayton's information on the paper that was in the cell phone. However, he testified that he had sold the phone to another person and had lied to Drayton about losing it. He also testified that he worked in the watermelon fields with Jamaicans, to whom he often sold cheap cell phones like the one at issue here, at marked-up prices.

The police arrested Jordan at Drayton's home three months after the crimes occurred. Drayton testified that when the police came to her home, she lied and told

them he was not there, because "I didn't want him to go to jail." Jordan admitted that when police arrested him that he was hiding in Drayton's attic.

1. Jordan contends that the evidence presented by the State was insufficient to authorize his convictions, because the only direct evidence, Drayton's testimony, was impeached, and because the other evidence was circumstantial and did not exclude every reasonable hypothesis other than guilt. We disagree and affirm.

Questions about reasonableness are generally for the jury, and "where the jury is authorized to find that the evidence, although circumstantial, was sufficient to exclude every reasonable hypothesis other than guilt, an appellate court will not disturb the finding unless the verdict of guilty is [i]nsupportable as a matter of law."[9]

> While the determination of whether the circumstances are sufficient to exclude every reasonable hypothesis except that of defendant's guilt is usually made by the jury and while we must review the evidence in the light most favorable to the jury verdict, we must not be blinded by that verdict when a reasonable hypothesis of innocence appears from the evidence or lack thereof, and may declare such as a matter of law.[10]

---

[9] (Citation omitted.) *Poole v. State*, 291 Ga. 848, 850 (1) (734 SE2d 1) (2012).

[10] (Footnote omitted.) *Gresham v. State*, 298 Ga. App. 136, 139-140 (1) (679 SE2d 344) (2009).

6

*(a) Burglary.* Pursuant to OCGA § 16-7-1 (a), "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another."

Here, although Drayton later changed her testimony, she told police that Jordan was absent from her home during the approximate hours of the robbery, that he returned home, threw money at her, and told her he had been part of a home invasion in Moultrie. She also told police that she had given Jordan the cell phone, and he admitted to placing the piece of paper with Drayton's personal information on it in the phone. The phone was then found, with items stolen from the victims' home, near the site of the crime.

While there was conflicting testimony about what Drayton told police and whether Jordan had sold the phone to someone else, on appeal, "[w]e do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[11]

---

[11] (Footnote omitted.) Id. at 137.

7

In *Poole v. State*,[12] a case analogous to the case at bar, our Supreme Court upheld a guilty verdict where a witness, who initially testified that the defendant offered to pay her to destroy evidence, later was impeached. In another case, this Court affirmed the defendant's conviction where the victim told police that her son hit her, then at trial testified that she fell and remembered nothing incriminating as to the defendant's behavior.[13] Further, where, as here, evidence regarding a defendant's identity is entirely circumstantial, "it need not exclude every *conceivable* inference or hypothesis–only those that are reasonable."[14] "To set aside the conviction it is not sufficient that the circumstantial evidence show that the act might by bare possibility have been done by somebody else."[15]

The evidence is sufficient to sustain Jordan's conviction for burglary.

---

[12] Supra at 849-850 (1).

[13] *Meeks v. State*, 281 Ga. App. 334, 335 (636 SE2d 77) (2006).

[14] (Footnote omitted; emphasis supplied.) *Hart v. State*, 305 Ga. App. 259, 262 (1) (a) (699 SE2d 445) (2010) (evidence sufficient where crime was perpetrated by masked man and witness testified that he had loaned defendant a mask somewhat similar to the mask at issue).

[15] (Citation and punctuation omitted.) *Parker v. State*, 140 Ga. App. 92, 93 (230 SE2d 99) (1976).

8

*(b) Armed robbery and aggravated assault counts.* OCGA § 16-8-41 (a) provides that "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon." OCGA § 16-5-21 (a) (2) provides, in pertinent part, that "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon . . . which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

Here, it is clear from the victims' testimony that guns were used in the commission of these serious crimes. The physical evidence, including a bullet found by police and bullet holes in the ceiling and mattress, also show that the intruders used guns. As we found in Division (1) (a), the presence of the cell phone, coupled with Drayton's testimony, was sufficient to place Jordan at the scene of the crime, and to establish him as a participant. Given Lewis' testimony that one of the intruders with a gun was a black male with a South Georgia accent, the jury was authorized to infer that Jordan was an armed participant in the crimes.[16]

---

[16] See *Hart*, supra. See also *Worley v. State*, 201 Ga. App. 704, 705 (2) (b) (411 SE2d 760) (1991) (witness' suspicion that he recognized defendant's accent, when coupled with other evidence, was sufficient to identify defendant as perpetrator of crime). Further, to the extent that Jordan contests his participation in the crimes as opposed to his mere presence, the evidence is sufficient to support his conviction

9

2. Jordan argues that his trial counsel was ineffective in failing to challenge the legality of his arrest warrants. Jordan argues that trial counsel should have challenged the warrants because the affidavits on which they were based did not provide the magistrate with sufficient information to support the existence of probable cause. He does not indicate what, specifically, was lacking in the affidavits. Jordan argues only that if the arrest warrants had been suppressed, the circumstances of his arrest – namely, that he was found hiding in his girlfriend's attic – would have been suppressed.

To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[17] "The likelihood

___

under a party to the crime theory given, inter alia, Drayton's statement that Jordan told her he was involved in a home invasion in Moultrie and threw money at her. See generally *Emerson v. State*, 315 Ga. App. 105, 113 (3) (726 SE2d 600) (2012) (evidence of defendant's conduct before and after the crime may give rise to inference that he participated in the crime). See also OCGA §§ 16-2-20, 16-2-21.

[17] *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SC 2052, 80 LE2d 674) (1984).

10

of a different result must be substantial, not just conceivable."[18] We are not required to address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either one of them, and "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[19]

Pretermitting whether trial counsel was deficient in failing to object to the arrest warrants, we find that even if the warrants had been been excluded, Jordan's claim fails because he cannot show prejudice.[20] No physical evidence, such as fruits of the crime, was admitted, nor did Jordan confess. The only specific allegation Jordan makes is that, since the warrants were not suppressed, one of the last things the jury heard was his testimony that police arrested him while he was hiding in his girlfriend's attic. This testimony, he argues, was "highly prejudicial . . . since there was no direct evidence linking Mr. Jordan to the scene of the crime." However, before testifying about hiding in the attic, Jordan already had testified that upon learning that he was a person of interest that he spoke to police on the telephone but

---

[18] (Citation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

[19] *Strickland*, supra at 697 (IV).

[20] See *Bradley v. State*, 283 Ga. 45, 46-47 (656 SE2d 842) (2008).

11

did not turn himself in; instead, he immediately left town and went to Atlanta for three months. Given this testimony and the circumstantial evidence linking Jordan to the crimes, he has failed to show that but for counsel's failure to challenge the warrants that there is a substantial likelihood that the outcome of his trial would have been different; even if the jury had not heard testimony that he was hiding from the police in an attic, they still would know that he did so for a while in a different city.[21]

3. Jordan asserts that the trial court erred in permitting the prosecutor to ask Jordan's girlfriend, Drayton, whether Jordan sent her a letter telling her how to testify, where the prosecutor did not tender the letter into evidence. Jordan argues that these questions allowed the prosecutor to undermine his character. At trial, Drayton testified that Jordan did not send her a letter and only told her to testify truthfully. There is no indication in the record that a letter existed. However, given Jordan's failure to object below, the issue has not been preserved for appeal, and the trial court did not err in allowing the testimony.[22]

---

[21] *Hill*, supra.

[22] See *Durham v. State*, __ Ga. __ (2) (734 SE2d 377) (2012) (allegations not raised below regarding the improper admission of evidence are waived in cases tried prior to January 1, 2013, after which time the new Evidence Code applies); *Williams*

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

*v. State*, 267 Ga. App. 308, 310 (4) (477 SE2d 570) (1996) (failure to object to questions waives challenge on appeal).