**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 6, 2020**

# In the Court of Appeals of Georgia

A20A0924. JERNIGAN v. THE STATE.

DILLARD, Presiding Judge.

Anthony Jernigan appeals his convictions for armed robbery, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon, arguing that (1) the evidence is insufficient to support his convictions; (2) the trial court erred by denying his motion to exclude a prior conviction from evidence; (3) the trial court erred in denying his motion to exclude two photographs that were improper character evidence; and (4) his trial counsel was ineffective for failing to subpoena a witness and adequately investigate the case. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that Hee Sung Kim owns a Metro PCS Store, which is a franchise pre-paid cell phone store in Atlanta. Kim's store only accepts debit cards and cash, and normally, Kim brings the cash home each evening to deposit in the bank the next morning. On September 4, 2012, Kim left work around 7:00 p.m. and drove home from Atlanta to Johns Creek. When Kim was almost home, he took a left turn through a yellow light and the car behind him followed "real fast." Kim thought this was strange behavior because if any police officers had been around, the person behind him would have been ticketed. Kim then proceeded into his subdivision, eventually turned into his driveway, and exited his car carrying his "lunch box."[2]

Before entering his house, Kim heard someone yelling; and when he turned around, he saw two men running toward him. When the men approached, one pointed a handgun at Kim and the other grabbed his lunch box, which contained approximately $3,000 in cash; his checkbook; and his wallet. After robbing Kim, the

---

[1] *See, e.g.*, *Cawthon v. State*, 350 Ga. App. 741, 741 (830 SE2d 270) (2019).

[2] The container at issue—which Kim refers to as his lunch box—is described by other witnesses as a bag.

two men ran back toward their car, which was parked nearby, and entered it. Kim then called 911 as he walked toward the suspects' car.

On the evening of the robbery, Jennifer Braynard, Kim's neighbor, noticed a suspicious looking car outside her home that was parked halfway in a driveway and halfway in the street. Braynard saw two men—who appeared to be in a "big hurry"—run to the car, get inside, and begin driving toward the exit of the neighborhood. Around that time, Braynard's husband, Scott, arrived home, and, concerned about the situation, left to follow the car in an effort to record its license-plate number. And as Scott turned into the street, he discovered the car, which the police later learned had run out of gas and "stopped dead in the road." Scott observed two men "sprinting" down the road away from the car; but at some point, the men stopped and returned to the vehicle. One of the men opened the driver's side door, retrieved something from the car, and threw it to the other man. The men also took something out of the trunk that looked like a bag or clothes before fleeing the neighborhood on foot.

Tyler Seymour—a patrol officer with the Johns Creek Police Department—responded to Kim's 911 call. When he arrived, Seymour pulled behind the suspects' car, which was still parked on the street, and talked to several witnesses—including

3

Kim and the Braynards. And through the passenger-side window, Seymour observed a multi-colored bag in the front seat, which Kim confirmed was his lunch box. Tanesha Taylor—a crime-scene investigator and evidence technician with the Johns Creek Police Department—also responded to the scene. Taylor retrieved several items from the car, including a CD, a red LG cell phone, Kim's lunch box (with the money still inside), two hats, a piece of mail addressed to Jernigan, a wallet containing a driver's license belonging to Michael Hampton, and documents showing that the car was registered to Tanecia Harrell. Later, in executing a search warrant for the car, Detective Robert Hall also discovered a shoe box containing letters addressed to and from Jernigan, as well as "some paperwork of his." Kim's assailants were not apprehended by the responding officers.

During the investigation that ensued, Taylor sent several of the items found in the suspects' car to the Georgia Bureau of Investigation to be tested for fingerprints. Hampton's fingerprints were found on, *inter alia*, a DVD and CD retrieved from the car, as well as on the front-passenger side door. Jernigan's fingerprints were found on a certified-mail receipt, an envelope addressed to him, and another item identified as "7F[.]" Item 7F's label was only partially legible and described it as "rear something that starts with the letter D and door."

4

According to Harrell (Jernigan's ex-girlfriend and the registered owner of the car abandoned by the suspects), Jernigan was the primary driver of the car, and he drove it "quite often." Harrell believed that Jernigan's brother may have also driven the car, but she was unaware of anyone else who did so. Regardless, to Harrell's knowledge, Jernigan was the last person who had the car before it was found at the scene of the robbery. Three defense witnesses, including Jernigan's brother, testified that they had either driven the car or knew people other than Jernigan who did so, but none of them had ever been to Johns Creek.

Following the investigation into the incident, Jernigan and Hampton were charged, via the same indictment, with armed robbery, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Following a joint jury trial, Jernigan was convicted of all charged offenses, and Hampton was acquitted on all counts. Jernigan then filed a motion for a new trial, but the motion was denied following a hearing. This appeal follows.

1. Jernigan first argues that the evidence was insufficient to support his convictions. We disagree.

When a criminal conviction is appealed, the evidence must be viewed "in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[3] In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility but only resolve whether "a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] Accordingly, the jury's verdict will be upheld so long as "there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[5] With these guiding principles in mind, we turn to Jernigan's specific challenge to the sufficiency of the evidence to support his convictions.

Jernigan argues that the evidence was insufficient to identify him as one of the perpetrators or even show he was present at the scene. And it is true, as the State concedes, that the evidence tying Jernigan to Kim's robbery is entirely

---

[3] *Howard v. State*, 340 Ga. App. 133, 136 (1) (796 SE2d 757) (2017); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[4] *Howard*, 340 Ga. App. at 136 (1) (punctuation omitted); *accord Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see Jackson*, 443 U.S. at 319 (III) (B).

[5] *Howard*, 340 Ga. App. at 136 (1) (punctuation omitted); *accord Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

circumstantial—as no witness identified him as being one of the assailants and he was not apprehended by police anywhere near the scene of the robbery.[6] Nevertheless, circumstantial evidence of identity may be sufficient to "enable a rational trier of fact to find a defendant guilty beyond a reasonable doubt."[7] But in order to warrant a conviction based solely upon circumstantial evidence, the proven facts "must be consistent with the hypothesis of guilt and must exclude every reasonable theory other than the guilt of the accused."[8] And when the evidence meets this test, "circumstantial evidence is as probative as direct evidence . . . ."[9] It is, of course, for the jury to determine "whether an alternative hypothesis is reasonable, and [when] a jury finds that the circumstantial evidence excluded every reasonable hypothesis save that of guilt, we will not disturb that finding unless it is insupportable as a matter of

---

[6] *See, e.g.*, *Harris v. State*, 236 Ga. 766, 767 (225 SE2d 263) (1976) ("The case against [the defendant] is circumstantial as neither robbery victim could positively identify him.").

[7] *Wilson v. State,* 344 Ga. App. 285, 287 (1) (a) (810 SE2d 303) (2018) (punctuation omitted); *accord Wickerson v. State*, 321 Ga. App. 844, 850 (1) (743 SE2d 509) (2013).

[8] *Johnson v. State*, 307 Ga. 44, 48 (2) (834 SE2d 83) (2019) (punctuation omitted); *accord Roberts v. State*, 296 Ga. 719, 721 (1) (770 SE2d 589) (2015).

[9] *Jones v. State*, 340 Ga. App. 142, 149 (2) (796 SE2d 765) (2017) (punctuation omitted); *accord Outz v. State*, 344 Ga. App. 616, 617 (1) (810 SE2d 678) (2018).

law."[10] So, when evidence regarding a defendant's identity is "entirely circumstantial, it need not exclude every *conceivable* inference or hypothesis—only those that are reasonable."[11] Thus, to set aside the conviction it is "not sufficient that the circumstantial evidence show that the act might by bare possibility have been done by somebody else."[12]

In this case, while no witness identified Jernigan as one of Kim's assailants, he was the primary driver of the car that the two suspects used in the commission of the crime; Harrell—Jernigan's ex-girlfriend and owner of the car—testified that Jernigan was the last person in possession of the car; Jernigan's fingerprints were found on items in the car; and at least one picture of Jernigan was found on a cell phone that

---

[10] *Johnson*, 307 Ga. at 48 (2); *see Outler v. State*, 305 Ga. 701, 703 (1) (a) (827 SE2d 659) (2019) ("Whether an alternative hypothesis raised by the defendant is 'reasonable' is a question committed principally to the jury, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law." (punctuation omitted)).

[11] *Jordan v. State*, 320 Ga. App. 265, 269 (1) (a) (739 SE2d 743) (2013) (punctuation omitted).

[12] *Jordan*, 320 Ga. App. at 269 (1) (a); *accord Patch v. State*, 337 Ga. App. 233, 237 (1) (786 SE2d 882) (2016); *see Harris*, 236 Ga. at 767 ("While the verdict of guilty was not demanded, it was not necessary for the [S]tate to prove that it was impossible for the offense to have been committed by anybody else, or that it might not, by bare possibility, have been done by another." (punctuation omitted)).

was discovered in the car. Harrell also testified that she was unaware of anyone other than Jernigan who drove her car. Furthermore, as discussed *infra*, the jury also heard evidence that Jernigan previously committed a similar robbery after following the victim home. And while three witnesses testified that they either drove Harrell's car or knew other *unidentified* people who did so, they all testified that they had never been to Johns Creek. Suffice it to say, evidence that, at some point, someone other than Jernigan may have driven Harrell's car, without more, raises only a bare suspicion that someone else was driving Harrell's car in Johns Creek on the night of the robbery.[13] Under such circumstances, although the State's case certainly could have been stronger, we cannot say there was insufficient circumstantial evidence to support the jury's verdict that Jernigan was one of Kim's assailants.[14]

---

[13] *See supra* note 12 & accompanying text.

[14] *See Williams v. State*, 239 Ga. 12, 12-13 (1) (235 SE2d 504) (1977) (holding, not that the evidence was insufficient to sustain the defendant's armed-robbery conviction, but that the circumstantial evidence of his participation in the robbery warranted a jury instruction on circumstantial evidence when the only evidence linking the defendant to the crime was "his wife's ownership of the getaway automobile; the fact that four black men were seen leaving the stolen truck and entering that automobile shortly after the crime; and that [the defendant] had made a foursome with the three identified robbers five hours earlier, when all were in Statesboro although all of them resided in Augusta, a great distance away"); *Wickerson*, 321 Ga. App. at 850 (1) (holding that there was sufficient circumstantial evidence that the defendant was one of the men who committed a robbery when, *inter*

2. Jernigan next argues that the trial court erred in denying his motion to exclude evidence of his prior armed-robbery conviction because it was improper character evidence under OCGA § 24-4-404 (b). Again, we disagree.

As to Jernigan's prior conviction, Samuel Danaquah testified that on June 28, 2002, someone in a new car with no license plate followed him home. As Danaquah was ascending the stairs to his apartment, he heard someone say, "Hey, give me what you're holding." Danaquah turned around and saw a man holding a gun. When Danaquah attempted to disarm the man, they struggled, and the assailant shot him four times. The armed man then ran to the same car where two other people were waiting, and they fled the scene. Danaquah later realized that the man had stolen his watch during the altercation. Ultimately, Jernigan pleaded guilty to the foregoing armed robbery, and a certified copy of his conviction was presented at trial.

---

*alia*, he was seen exiting a car, which was registered to the defendant's mother, with the other perpetrator shortly after the robbery and a cell phone matching the description of the one stolen from the victim was found in the car); *Strickland v. State*, 156 Ga. App. 475, 477 (3) (274 SE2d 823) (1980) (holding that there was sufficient circumstantial evidence that the defendant committed armed robbery when, although no one positively identified the defendant as the perpetrator, evidence showed, *inter alia*, that his car was near the scene at the time of the robbery and the robbers were seen running in the direction of the car).

10

In a pre-trial hearing, Jernigan objected to the admission of this other-acts evidence, arguing that the 2002 robbery was improper character evidence. And after hearing arguments from the parties, the trial court ruled that Jernigan's prior conviction was admissible under OCGA § 24-4-404 (b) to show his intent to commit the crime and identity as one of the robbers.

Rule 404 (b) provides, *inter alia*, that:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Nevertheless, evidence that is offered for a proper purpose under Rule 404 (b) may still be excluded under OCGA § 24-4-403 if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[15] And to properly weigh the considerations of these two evidentiary rules and evaluate the admissibility of so-called "other acts"

---

[15] OCGA § 24-4-403; *accord Morris v. State*, 340 Ga. App. 295, 306 (4) (797 SE2d 207) (2017) (punctuation omitted).

evidence,[16] the Supreme Court of Georgia has adopted a three-part test: "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act."[17] We review a trial court's decision "to admit evidence of other crimes for a clear abuse of discretion."[18]

---

[16] *See Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016) ("Many provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit. Rule 404 (b) is one such provision, and so, when we have considered the meaning of Rule 404 (b), we consistently have looked for guidance in the decisions of the federal appellate courts construing and applying Federal Rule of Evidence 404 (b)." (citations omitted)). *State v. Jones*, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015) (noting that Georgia courts have adopted the three-part test used by the Eleventh Circuit Court of Appeals in evaluating other-acts evidence under the Federal Rules of Evidence, upon which Georgia's new Evidence Code is modeled); *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015) (same).

[17] *Bradshaw*, 296 Ga. at 656 (3); *accord Morris*, 340 Ga. App. at 306 (4).

[18] *Burgess v. State*, 349 Ga. App. 635, 640 (3) (824 SE2d 99) (2019); *see Silvey v. State*, 335 Ga. App. 383, 386 (1) (780 SE2d 708) (2015) (physical precedent only as to Divisions (2) (a) and (3) (b) (2)) (noting that a trial court's decision to admit other-acts evidence will be overturned only where there is a clear abuse of discretion).

As to the first prong of the foregoing test, the trial court found that the 2002 robbery was admissible to show Jernigan's intent to commit the crime and his identity as one of the assailants. We will address each of these grounds in turn.

(a) *Intent*.

(i) *Relevance to an Issue Other than Character*. The Supreme Court of Georgia recently explained that "[a]s to intent, a defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element to be proved by the State."[19] And here, although Jernigan pleaded not guilty to the charged offenses, he contends that he affirmatively removed intent as an issue because he denied participation in the robbery altogether. But this argument is a nonstarter. Indeed, relying on Eleventh Circuit cases and applying our new Evidence

---

[19] *Burgess*, 349 Ga. App. at 641 (3); *see Olds*, 299 Ga. at 75 (2) ("[B]ecause a plea of not guilty puts the prosecution to its burden of proving every element of the crime—including intent—evidence of other acts that tends to make the requisite intent more or less probable to any extent is relevant.").

Code, we have already considered and flatly rejected it.[20] So, intent remained a material issue at trial.

Furthermore, under OCGA § 24-4-401, evidence has relevance if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[20] *See Silvey*, 335 Ga. App. at 387 (1) (a) ("Although [the defendant] argues that his defense denying that he was involved in the burglaries removed the element [of intent] from the case, the Eleventh Circuit has consistently rejected such an argument."); *United States v. Nahoom*, 791 F2d 841, 845 (II) (11th Cir. 1986) (rejecting argument that denial of involvement in crime removes issue of intent from the case); *United States v. Holman*, 680 F2d 1340, 1349 (II) (B) (11th Cir.1982) (holding that unequivocal denials of participation in the crime along with representations that defendant would not actively dispute the existence of intent were insufficient to remove the issue of intent from the case). In arguing that he removed the issue of intent by denying any involvement in the crime, Jernigan relies on a single 1995 case, *Banks v. State*, 216 Ga. App. 326 (454 SE2d 784) (1995), that was issued well before the enactment of our new Evidence Code. In *Banks*, we noted that "neither motive nor intent was an issue in this case. [The defendant's] defense was that he did not commit this crime, and not that he committed the acts but lacked the requisite criminal intent or motive." *Banks*, 216 Ga. App. at 328 (2). But because Jernigan was tried in October 2013, Georgia's new Evidence Code applies in this case. *See* Ga. L. 2011, p. 99, § 101 (providing that the new Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013). Indeed, as explained by our Supreme Court, "[m]any provisions of the new Evidence Code[, including Rule 404 (b),] were borrowed from the Federal Rules of Evidence, and when we consider the meaning of these provisions, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." *Olds*, 299 Ga. at 69 (2). So, to the extent *Banks* conflicts with our decisions applying the new Evidence Code, it is of no precedential utility.

And when the extrinsic offense is offered to "prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses."[21] As a result, when "the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied."[22] And here, because Jernigan's prior and current convictions both involved armed robbery, the same state of mind is required for both offenses, and the first prong of Rule 404 (b) is satisfied.[23]

---

[21] *Bradshaw*, 296 Ga. at 657 (3) (punctuation omitted); *accord Cordova v. State*, 351 Ga. App. 652, 660 (3) (a) (832 SE2d 465) (2019); *Silvey*, 335 Ga. App. at 387 (1) (a).

[22] *Bradshaw*, 296 Ga. at 656-657 (3) (punctuation omitted); *accord Cordova*, 351 Ga. App. at 660 (3) (a); *see State v. Jones*, 297 Ga. 156, 160-61 (2) (773 SE2d 170) (2015) ("[B]ecause the same state of mind was required for committing the prior act and the charged crimes, . . . evidence of [the defendant's] prior conviction was relevant under Rule 404(b) to show [his] intent on this occasion.").

[23] *See Cordova*, 351 Ga. App. at 660 (3) (a) ("Because the Appellant's actions at the [prior] residence (specifically, entering a five-year-old girl's bedroom without authority) involved the same mental state as the Appellant allegedly had when he entered an eleven-year-old and twelve-year-old girls' bedroom without permission at the . . . residence [at issue in this case], the evidence from the [prior] residence was relevant to establish intent."); *Wilson v. State*, 336 Ga. App. 60, 62-63 (2) (a) (783 SE2d 662) (2016) (holding that the first prong of the Rule 404 (b) test was satisfied when the defendant was convicted of aggravated assault and his earlier uncharged actions offense could have constituted aggravated assault); *Silvey*, 335 Ga. App. at 387 (1) (a) ("Because [the defendant's] actions in committing the [the prior] burglary and pawning the Class Ring involved the same mental state as [his current act of]

(ii) *Rule 403*. The second part of the Rule 404 (b) analysis—which requires us to weigh the probative value of relevant evidence against its danger of unfair prejudice—is governed by Rule 403, which provides:

> Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Additionally, the Supreme Court of Georgia has explained that the Rule 403 analysis must be done on a case-by-case basis and "requires a common sense assessment of all the circumstances surrounding the extrinsic act and the charged offense."[24] Our Supreme Court also explained in *Olds v. State*[25] that "relevance is a binary issue; evidence is either relevant or it is not."[26] On the other hand, probative value is a

---

burglarizing a house to obtain gold jewelry to sell for cash, the evidence from the [prior] burglary was relevant to establish intent.").

[24] *Castillo-Velasquez v. State,* 305 Ga. 644, 648 (2) (827 SE2d 257) (2019) (punctuation omitted); *accord Kirby v. State*, 304 Ga. 472, 481 (4) (a) (819 SE2d 468) (2018).

[25] 299 Ga. 65 (786 SE2d 633) (2016).

[26] *Booth v. State*, 301 Ga. 678, 684 (3) (804 SE2d 104) (2017).

range; "all relevant evidence has some probative value, but not necessarily much."[27]

So, while the application of the Rule 403 test is "a matter committed principally to the discretion of the trial courts, . . . the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly."[28] Significantly, the major function of Rule 403 is to "exclude matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect"[29] Lastly, in considering the probative value of evidence offered to prove intent, "these circumstances include the prosecutorial need for the extrinsic evidence, the overall similarity between the extrinsic act and the charged offense, and the temporal remoteness of the other act."[30]

---

[27] *Id.*

[28] *Olds*, 299 Ga. at 70 (2) (punctuation omitted); *accord Hood v. State*, 299 Ga. 95, 102 (4) (786 SE2d 648) (2016).

[29] *McAllister v. State*, 351 Ga. App. 76, 81 (1) (830 SE2d 443) (2019) (punctuation omitted); *accord Brown v. State,* 303 Ga. 158, 162 (2) (810 SE2d 145) (2018).

[30] *Castillo-Velasquez,* 305 Ga. at 648 (2) (punctuation omitted); *accord Kirby*, 304 Ga. at 481 (4) (a); *see* Ronald L. Carlson & Michael Scott Carlson, *Carlson on Evidence* 130 (5th ed. 2016) ("Evaluating the balance between probativity and prejudice under Rule 403 calls for a commonsense assessment of all the circumstances surrounding the other act, including [the] proponent's need for the [Rule 404 (b)] evidence, the overall similarity between the extrinsic evidence and the offense at issue, and the temporal proximity of the two.").

In this case, the 2002 and 2012 armed robberies were similar in that, in both robberies, Jernigan followed the victim home, robbed them at gun point just outside of his front door, and then fled the scene with the help of accomplices. The only significant difference in the two robberies is that, unlike Kim, Danaquah did not comply with Jernigan's demands and was shot during the struggle that ensued. But when, as here,

> the prior and current crime are identical [*i.e.*, armed robberies] and the State introduces defendant's prior conviction demonstrating that he was previously convicted of an identical crime requiring the State to prove he acted with an identical specific criminal *intent*, the similarity in the manner of commission of the crimes may be of lesser importance.[31]

Indeed, when other-acts evidence is introduced to "prove *intent* [as opposed to identity] . . . a lesser degree of similarity between the charged crime and the extrinsic evidence is required."[32] In sum, especially given the lesser importance of the

---

[31] *Burgess*, 349 Ga. App. at 640 (3); *see United States v. Perrier*, 619 F. App'x 792, 797 (IV) (A) (11th Cir. 2015) ("[A]lthough we do not know the underlying facts of the extrinsic offense [which was also a possession of a firearm charge], it is clearly similar enough under our precedent to be probative of [defendant's] knowledge in this case.").

[32] *Kirby*, 304 Ga. at 484 (4) (a) (i); *see United States v. Delgado*, 56 F3d 1357, 1366 (III) (B) (11th Cir. 1995) ("[W]hen other crimes evidence goes to intent rather than identity a lesser degree of similarity between the charged crime and the

similarity between the two crimes when the other-acts evidence is admitted to prove *intent*, we are persuaded that the two armed robberies were sufficiently similar to weigh in favor of admission under Rule 403.[33]

As to the next consideration under the Rule 403 balancing test, the other-acts evidence was "important to the State's case, thereby enhancing its probative value."[34]

uncharged crime is required."). When extrinsic other-acts evidence is admitted to prove *identity*, "the likeness of the offenses is the crucial consideration." *Brooks v. State*, 298 Ga. 722, 725 (2) (783 SE2d 895) (2016) (punctuation omitted). Indeed, when extrinsic evidence is admitted to prove identity, "[t]he physical similarity must be such that it marks the offenses as the handiwork of the accused." *Id.* (punctuation omitted). Put another way, the evidence must "demonstrate a modus operand[,] [t]he extrinsic act must be a 'signature' crime, and the defendant must have used a modus operandi that is uniquely his." *Id.* (punctuation omitted). But as noted *infra*, we need not reach the issue of whether Jernigan's 2002 armed robbery was admissible to show identity, and thus, this much more stringent standard regarding the similarity of the two crimes is not applicable here.

[33] *See Cordova*, 351 Ga. App. at 660 (3) (a) (holding that other-acts evidence was admissible under Rule 403 when, within an hour of being escorted out of a five-year-old girl's bedroom, the defendant was found inside an 11-year-old and 12-year-old girls' bedroom in a different residence nearby); *Kirby*, 304 Ga. at 483 (4) (a) (i) (holding that other-acts evidence was admissible when, *inter alia*, "[i]n both cases, there is evidence that [a]ppellant went to a place intending to steal and at some point in that process used a deadly weapon to assault the person from whom he was planning to steal and pulled down her underwear, but then did not complete a rape); *Wilson*, 336 Ga. App. at 61-63 (2) (a) (holding that other-acts evidence was admissible under Rule 404 (b) when, *inter alia*, both offenses involved the defendant pulling out a knife during an altercation).

[34] *Burgess*, 349 Ga. App. at 643 (3).

19

And here, the State's evidence in this case—while sufficient to support Jernigan's convictions—was entirely circumstantial. No witnesses identified Jernigan as one of the assailants, he was not found near the crime scene, and the primary evidence implicating him was that he was likely the only person who would have been driving the car used in the commission of the crime at the time of the robbery. Under such circumstances, the State's need for evidence that Jernigan committed a similar crime was significant, which weighs in favor of admission under Rule 403.[35]

As to temporal proximity, although there was a ten-year time span in between the 2002 and 2012 robberies, our Supreme Court has explained that "the prior crime need not be very recent, especially [when] a substantial portion of the gap in time

---

[35] *See Kirby*, 304 Ga. at 483 (4) (a) (i) (explaining that the prosecution needed other-acts evidence because, while the evidence was sufficient to support the defendant's conviction even without the prior offense, the State's evidence was "thin," and noting that "[t]he high prosecutorial need for the evidence of the [prior] incident greatly increase[d] its probative value"); *Brannon v. State*, 298 Ga. 601, 607-08 (4) (783 SE2d 642) (2016) (holding, as to prosecutorial need for other-acts evidence, that the evidence was necessary to rebut the defendant's alibi defense that he was not the perpetrator); *Burgess*, 349 Ga. App. at 643 (3) (finding, in applying the Rule 403 balancing test, that evidence was important to the State's case when, although there was some direct evidence that the defendant sold cocaine, much of the evidence presented to prove the defendant's drug enterprise was circumstantial in nature).

occurred while the defendant was incarcerated."[36] And in this case, the State

represented to the trial court, without objection from Jernigan, that he robbed Kim

only two months after completing his prison sentence for the 2002 robbery. Under

such circumstances, given that Jernigan was incarcerated almost the entire time

between the two armed robberies, the 2002 robbery was not so remote as to be

lacking in probative value.[37]

Finally, the trial court gave a lengthy limiting instruction to the jury regarding

the purposes for which the other-acts evidence was admitted. Specifically, the court

instructed, *inter alia*, that evidence of the 2002 robbery could be considered only to

---

[36] *Castillo-Velasquez*, 305 Ga. at 649 (2) (punctuation omitted); *accord Kirby*, 304 Ga. at 484 (4) (a) (i); *see Sloan v. State*, 351 Ga. App. 199, 210 (2) (e) (i) (830 SE2d 571) (2019) ("While the time gap between the offenses spans many years, we must take into account that it is likely that he was incarcerated for a significant portion of the intervening years." (punctuation omitted)).

[37] *See Castillo-Velasquez*, 305 Ga. at 649 (2) (explaining that "[a]s for temporal proximity, although almost nine years passed between the 2004 crime and [the defendant's] murder in 2013, the prior acts were not so remote as to be lacking in evidentiary value" when the defendant was incarcerated for eight during that gap in time (punctuation omitted)); *Kirby*, 304 Ga. at 484 (4) (a) (i) (holding that, although more than 11 years passed between the 1990 crimes and [the instant] murder in 2002, the prior acts were not so remote as to be lacking in evidentiary value when it was likely that he was incarcerated for a significant portion of the intervening years); *Jones v. State,* 301 Ga. 544, 548 (2) (802 SE2d 234) (2017) (noting that a temporal span of six years was not too remote to impact the probative value of an extrinsic act in any significant way).

prove intent and identity and for no other purpose; that the jury may not infer from such evidence that Jernigan is of a character that would commit such crimes; and that Jernigan was on trial for the crimes charged in the indictment and not for any other acts. This instruction reduced the risk of any unfair prejudice resulting from the admission of Jernigan's 2002 conviction.[38]

Given the foregoing, as to the second prong of the Rule 404 (b) analysis, the trial court did not abuse its discretion in finding that the probative value of Jernigan's 2002 conviction was not *substantially* outweighed by unfair prejudice. Indeed, the similarity between the crimes, the prosecutorial need for the evidence, and the temporal proximity of the crimes all enhance its probative value, while the trial court mitigated any risk of unfair prejudice by giving a limiting instruction. Furthermore, we are mindful that, "[e]ven in close cases, the balance is struck in favor of

---

[38] *See Moton v. State*, 351 Ga. App. 789, 793-94 (833 SE2d 171) (2019) (noting that the risk of unfair prejudiced was reduced by the trial court's limiting instruction); *Sloan*, 351 Ga. App. at 210 (2) (e) (i) (acknowledging that a limiting instruction can lessen the prejudicial effect of other-acts evidence); *Burgess*, 349 Ga. App. at 643 (3) ("[A]ny prejudice resulting from admission of evidence of [the defendant's] prior conviction was mitigated by the limiting instruction the trial court gave when the evidence was introduced and in its final charge to the jury.").

admissibility in determining whether its probative value is outweighed by the danger of unfair prejudice."[39]

(iii) *Sufficient Proof.* As to the final prong of the Rule 404 (b) test, Jernigan pleaded guilty to the 2002 crime, and thus "the third and final requirement, that there be sufficient proof that [he] committed these crimes, has also been met."[40] In sum, given that each of the three prongs of the 404 (b) test are satisfied and the trial court mitigated any unfair prejudice by giving a limiting instruction to the jury, we cannot say that the trial court clearly abused its discretion in admitting the other-acts evidence to prove intent in this case.

---

[39] *Wilson*, 336 Ga. App. at 63 (2) (b) (punctuation omitted); *see Gerbert v. State*, 339 Ga. App. 164, 177 (3) (b) (793 SE2d 131) (2016) ("In close cases, the balance should be struck in favor of admissibility, because Rule 403 is an extraordinary remedy that should be used sparingly, as it permits the trial court to exclude probative evidence.").

[40] *Brannon*, 298 Ga. at 608 (4); *see Chase v. State*, 337 Ga. App. 449, 454 (3) (a) (787 SE2d 802) (2016) (holding that the defendant's two prior convictions for financial identity fraud satisfied the 404 (b) test for admission when, *inter alia*, the defendant pleaded guilty to those offenses).

(b) *Identity.* Because we held in Division 2 (a) that Jernigan's prior conviction was admissible to prove his intent to commit the crime, we need not address whether this evidence was also admissible to prove his identity as the perpetrator.[41]

3. Jernigan also contends that the trial court erred in admitting two photographs found on the cell phone left in the suspects' abandoned car because they constitute improper character evidence under Rule 404 (b). This claim likewise lacks merit.

Prior to trial, the State informed the trial court that it intended to present photographs found on the cell phone discovered in the car abandoned by the suspects, including one showing Jernigan holding a handgun. Jernigan objected, arguing that they amounted to improper character evidence and were not relevant to the issues at trial. The State argued that this evidence was relevant to show that the cell phone in the assailants' car belonged to Jernigan. The trial court initially indicated that the State could not present any of the photographs found on the cell phone, but later found that "one or a couple of them [were] probably probative." The court then stated

---

[41] *See Brannon*, 298 Ga. at 607 (4) n.3 ("Having determined that the evidence was admissible as to intent, knowledge and identity, we need not examine whether it was also admissible to show participation in a plan."); *Wilson*, 336 Ga. App. at 62-63 (2) (a) ("Having determined that the evidence was admissible as to intent, we need not examine whether it was also admissible on the other issues for which the trial court admitted it." (punctuation omitted)).

24

that some of the pictures were cumulative and instructed the State to "pick two or three." As to the photo of Jernigan holding the gun, the court found that it went to the weight of the evidence and the jury could decide how probative it was under the circumstances. As to the other exhibit at issue, a picture of a gun found on the phone, the trial court did not provide a specific basis for admitting it.

At trial, a detective on the case testified that he executed a search warrant for the cell phone and reviewed call logs and photographs found on the phone. During his testimony, the State submitted several exhibits, including State's Exhibits 45 and 59, which are the photographs Jernigan now claims were inadmissible. Jernigan reiterated his objection to the admission of this evidence, and the trial court noted the objection for the record, but admitted the exhibits anyway.[42]

In the record transmitted to this Court, State Exhibits 45 and 59 are of extremely poor quality, making it difficult to confirm what they depict.[43]

---

[42] In ruling on Jernigan's objection, the trial court indicated only that Exhibits 44, 45, and 49 were being admitted. But ultimately, Exhibit 59 was also admitted into evidence.

[43] It is the burden of the appellant to "compile a complete record of what happened at the trial level . . . ." *Doster v. State*, 218 Ga. App. 174, 174-75 (460 SE2d 818) (1995). This necessarily includes a burden to ensure that necessary portions of the record on appeal are legible.

Nevertheless, it is apparent from the testimony at trial and the parties' briefs that Exhibit 45 shows Jernigan holding a handgun and Exhibit 59 is a picture of some kind of gun. But despite Jernigan's argument that these photographs are improper character evidence, the trial court did not admit Exhibits 45 and 59 for any of the purposes enumerated in Rule 404 (b) or engage in the 404 (b) analysis detailed in Division 2 *supra*.[44] Additionally, although Jernigan referred to the photographs during the pre-trial hearing as improper character evidence in passing, nothing in the court's findings or the substantive arguments of the parties indicate that the pictures were being admitted under Rule 404 (b). In any event, the Supreme Court of Georgia has held that "[t]he limitations and prohibition on 'other acts' evidence set out in OCGA § 24-4-404 (b) do not apply to intrinsic evidence."[45] Furthermore, our

[44] *See* OCGA § 24-4-404 (b) ("Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.").

[45] *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017) (punctuation and footnote omitted); *see Brewner v. State*, 302 Ga. 6, 14 (III) n.3 (804 SE2d 94) (2017) (noting that intrinsic evidence is not subject to the requirements of Rule 404 (b)).

Supreme Court and the Eleventh Circuit have both set out factors defining this type

of evidence:

> Evidence is admissible as intrinsic evidence when it is (1) an uncharged
> offense arising from the same transaction or series of transactions as the
> charged offense; (2) necessary to 'complete the story of the crime'; *or*
> (3) *inextricably intertwined with the evidence regarding the charged*
> *offense*.[46]

But as with any evidence, "[i]ntrinsic evidence must . . . satisfy Rule 403,"[47] and the

application of the test delineated in this rule is "a matter committed principally to the

discretion of the trial courts, [and] . . . the exclusion of evidence under Rule 403 is an

extraordinary remedy which should be used only sparingly."[48]

In applying these factors, our Supreme Court has noted that evidence pertaining

to "the chain of events explaining the context, motive, and set-up of the crime is

properly admitted if it is linked in time and circumstances with the charged crime, or

---

[46] *Williams*, 302 Ga. at 485 (IV) (d) (punctuation omitted) (emphasis supplied);
*accord Brewner*, 302 Ga. at 14 n.3 (III); *Brooks*, 298 Ga. at 726 n.11 (2); *United
States v. Edouard*, 485 F3d 1324, 1344 (C) (11th Cir. 2007).

[47] *Williams*, 302 Ga. at 485 (IV) (d); *see Edouard*, 485 F3d at 1344 (C)
("[E]vidence of criminal activity other than the charged offense, whether inside or
outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403.")

[48] *Olds*, 299 Ga. at 70 (2).

forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."[49] Furthermore, evidence of other acts is "'inextricably intertwined' with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted."[50] And significantly, this sort of intrinsic evidence "remains admissible even if it incidentally places [the defendant's] character at issue."[51]

Here, the photographs at issue, even if they incidentally placed Jernigan's character at issue, were admissible intrinsic evidence. Specifically, the challenged evidence "plainly pertained to the chain of events in the case and was linked by time and circumstance with the charged crimes, [rather than prior crimes,] making the

---

[49] *Williams*, 302 Ga. at 485- 86 (IV) (d) (punctuation omitted); *accord Smith v. State*, 302 Ga. 717, 725 (4) (808 SE2d 661) (2017); *Edouard*, 485 F3d at 1344 (C).

[50] *Williams*, 302 Ga. at 486 (IV) (d) (punctuation omitted); *accord Smith*, 302 Ga. at 725 (4).

[51] *Williams*, 302 Ga. at 486 (IV) (d) (punctuation omitted); *accord Smith*, 302 Ga. at 725 (4); *see Baughns v. State*, 335 Ga. App. 600, 602 (1) (782 SE2d 494) (2016) ("Under longstanding Georgia law, all the acts and circumstances surrounding and constituting the res gestae are admissible, despite the fact that they may reflect poorly on a defendant's character.").

information necessary to complete the story for the jury."[52] Indeed, evidence that a phone—which was found in the car *used by the suspects in robbing Kim with a firearm*—contained pictures of Jernigan with a firearm and a separate picture of a firearm is inextricably intertwined with other evidence of the charged offenses, which included armed robbery as well as other offenses involving possession of a firearm. Simply put, the photograph of Jernigan on the phone provided another connection between him and the car used in the robbery, and both pictures were relevant to show that he had access to a firearm. Thus, because the exhibits were inextricably intertwined with evidence to show Jernigan's access to a firearm, the strict requirements of Rule 404 (b) do not apply to the images at issue.[53]

---

[52] *Williams*, 302 Ga. at 486 (IV) (d).

[53] *See Thompson v. State*, 302 Ga. 533, 543 n.9 (III) (B) (807 SE2d 899) (2017) (explaining that evidence that the defendant was a drug dealer intrinsic evidence because "it form[ed] an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted"); *United States v. Fortenberry*, 971 F2d 717, 721 (III) (A) (11th Cir. 1992) (finding no abuse of discretion in admitting evidence of defendant's participation in uncharged double murder as intrinsic to firearm possession charges because it was part of chain of events, explained context and circumstances of how and why the defendant obtained possession of a firearm and was not unduly prejudicial).*Cf. Sanchez-Villa v. State,* 341 Ga. App. 264, 273 (1) (a) (799 SE2d 364) (2017) (holding that evidence was not intrinsic because it lacked any demonstrable connection to the events of the night of defendant's arrest).

As to Rule 403, Jernigan has not articulated how, given the circumstantial nature of the State's case, the significant probative value of the exhibits at issue was *substantially* outweighed by unfair prejudice. Indeed, Georgia and federal appellate courts have affirmed the admission of intrinsic evidence far more damaging than the photographs at issue.[54] So, given the foregoing and the deference afforded a trial court's ruling on the admissibility of evidence, we are unpersuaded that the trial court abused its discretion in admitting State Exhibits 45 and 59 into evidence.

---

[54] *See Fleming v. State*, 306 Ga. 240, 245 (3) (a) (830 SE2d 129) (2019) ("[A]lthough the evidence [of the defendant's gang affiliation] may have incidentally placed [the defendant's] character at issue, its probative value was not substantially outweighed by the danger of unfair prejudice under these circumstances."); *Baughns*, 335 Ga. App. at 603 (1) (affirming the admission uncharged offenses that were part of a *crime spree* committed by a burglary crew of which the defendant was a part, even though there was no evidence that he directly participated in those offenses); *United States v. Hill*, 518 Fed.Appx. 744, 748 (II) (11th Cir. 2013) (finding no abuse of discretion in admitting evidence that defendant participated in drive-by shooting of confidential informant's home as intrinsic to possession of drugs with intent to distribute charge because shooting occurred six days after police discovered defendant with drugs and large sum of cash, showing shooting was connected in time and circumstances); *United States v. Gay*, 423 Fed.Appx. 873, 876 (II) (A) (11th Cir. 2011) (holding that the trial court did not abuse its discretion in admitting intrinsic evidence that defendant was part of a robbery crew that committed *twenty* uncharged robberies).

4. Lastly, Jernigan argues that he received ineffective assistance of counsel because his counsel failed to subpoena an alibi witness and to adequately investigate the case. Yet again, we disagree.

To prevail on his Sixth Amendment claim of ineffective assistance, a claimant "must show both that counsel's performance was deficient and that the deficient performance prejudiced [him]."[55] And with respect to deficient performance, a claimant must show that "his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms."[56] Moreover, when reviewing counsel's performance, "we apply a strong 'presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."[57] Indeed, to show that he was prejudiced by the performance of his counsel, a claimant "must prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

[55] *McAllister v. State*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[56] *Jackson v. State*, 306 Ga. 266, 272 (5) (830 SE2d 99) (2019) (punctuation omitted); *accord Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013).

[57] *Jackson*, 306 Ga. at 272 (5) (punctuation omitted); *accord Romer*, 293 Ga. at 344 (3).

31

different."[58] And a reasonable probability is "a probability sufficient to undermine confidence in the outcome."[59] Finally, the trial court's factual findings and credibility determinations are "reviewed under a clearly erroneous standard, but this Court will independently apply the legal principles to the facts."[60] With these guiding principles in mind, we turn to Jernigan's specific claims.

(a) Jernigan argues that his counsel was ineffective for failing to subpoena Rekeana Aldridge to testify at trial because she was with him during the time the robbery occurred.

At the motion-for-new-trial hearing, Aldridge testified that she and Jernigan were friends and she saw him on the day of the robbery. When first asked when she saw Jernigan, she said "I can't remember, but he was there for the day." She later stated that he was there for a long period of time, but it was daytime. Aldridge later testified that he was there during "lunch hours," but it then "ran into the nighttime."

---

[58] *Jackson*, 306 Ga. at 272 (5) (punctuation omitted); *accord Arnold v. State*, 292 Ga. 268, 269 (2) (737 SE2d 98) (2013).

[59] *Jackson*, 306 Ga. at 272 (5) (punctuation omitted); *accord Arnold*, 292 Ga. at 269 (2).

[60] *Jackson*, 306 Ga. at 272 (5) (punctuation omitted); *accord Jones v. State*, 305 Ga. 750, 755 (4) (827 SE2d 879) (2019).

According to Aldridge, she told Jernigan's trial counsel everything that she testified to at the hearing, and he asked if he could put her on the witness list for trial. Aldridge stated that she was supposed to come to court for the trial, but she could not be there because she was in a car accident the prior day. Nevertheless, Jernigan's counsel never subpoenaed her to appear at trial.

Kim's robbery occurred at around 8:00 p.m., and significantly, Aldridge could not provide definitive testimony that she was with Jernigan at that precise time. And consistent with Aldridge's testimony, Jernigan's trial counsel testified that he did not think he needed to subpoena her because "[s]he was definitely willing to testify." Indeed, when asked if the absence of a subpoena was the reason Aldridge was not at trial, counsel testified "[i]f she was in an accident, she couldn't have come because she was in an accident." Defense counsel also explained that, while Aldridge's testimony would have been helpful, it was not conclusive. Ultimately, Jernigan's counsel testified that he remembered speaking with Aldridge, but did not recall her providing any "information that there was an alibi." Specifically, defense counsel stated, "I'll put it bluntly. I did not, from that conversation, walk away thinking that there was an alibi defense . . . ."

Based on the foregoing, Jernigan cannot show that his counsel was deficient for failing to subpoena Aldridge or there was a reasonable likelihood the outcome of his trial would have been different if she had testified. First, defense counsel's decision not to subpoena Aldridge was reasonable because she willingly agreed to testify on Jernigan's behalf without one and counsel had no reason to believe otherwise. Second, even if defense counsel *had* subpoenaed Aldridge, it appears that she still would have been unable to testify due to her car accident. Third, even if she could have appeared after a continuance, she did not remember exactly when Jernigan left her home and could not testify definitively that she was with him at 8:00 p.m. So, given the equivocal nature of Aldridge's testimony, the trial court was entitled to credit the testimony of Jernigan's counsel that she did not provide him with

information justifying an alibi defense.[61] As a result, this ineffective-assistance claim is without merit.[62]

(b) Jernigan also maintains that his counsel was ineffective for failing to adequately investigate the case.

Specifically, Jernigan argues that—based on the testimony of Latosha Smith at the motion-for-new-trial hearing—his counsel was ineffective for failing to investigate certain phone call logs from the night of the robbery.[63] According to

---

[61] *See Brooks v. State*, 324 Ga. App. 352, 357-58 (2) (d) (750 SE2d 423) (2013) ("Although [the defendant] provided conflicting testimony regarding what his trial counsel told him about the surveillance video, the trial court was entitled to credit trial counsel's testimony over [the defendants]."); *Driggers v. State*, 295 Ga. App. 711, 718-19 (4) (d) (673 SE2d 95) (2009) (explaining that even though witness, who was not called to testify at trial, offered potentially exculpatory testimony at the motion-for-new-trial hearing, and the defendant's testimony conflicted with counsel's over whether counsel had been given the witness's name, trial court was entitled to believe counsel and to find no ineffectiveness).

[62] *See Scott v. State*, 288 Ga. App. 738, 740 (3) (655 SE2d 326) (2007) (holding that trial counsel was not ineffective for failing to call an alibi witness who equivocated regarding her ability to account for the defendant's whereabouts); *Hall v. State*, 243 Ga. App. 804, 805 (534 SE2d 196) (2000) (rejecting an ineffective-assistance-of-counsel claim based on a failure to call alibi witnesses and noting that "trial counsel's decision not to call either of these witnesses, whose potential testimony was questionable and would likely not have supported an alibi defense, falls under the category of trial strategy, which this Court will not second-guess").

[63] Jernigan summarily asserts that if his counsel had investigated further, it is likely he would have found other witnesses at Aldridge's apartment complex who

Smith, she was with Jernigan for about an hour outside of the apartment complex where Aldridge lives on the evening of the robbery.[64] Smith testified that Aldridge used her cell phone twice to call his own phone in an attempt to locate it. Jernigan's trial counsel testified that he did not remember if he investigated the call logs for Smith's phone, but he explained that his chosen trial strategy was to present witnesses to testify that the car used in the robbery was "a community-type car; that everybody used [it]."

---

could have testified as to his whereabouts at the time of the robbery. But Jernigan has not identified any particular uncalled witnesses or their proposed testimony, so this claim is entirely too speculative and cursory to support an ineffective-assistance-of-counsel claim. *See Collins v. State*, 300 Ga. App. 657, 660 (3) (686 SE2d 305) (2009) ("[When], as here, the defendant fails to proffer the testimony of an uncalled witness, he cannot prove that there is a reasonable probability that the trial would have ended differently." (punctuation omitted)).

[64] Although Jernigan does not expressly argue that his counsel was ineffective for failing to call Smith to testify as an alibi witness, he suggests that she was with him around the time the robbery occurred. But at the motion-for-new-trial hearing, Smith testified that she thought she saw him after 7:00 p.m., even though she could not recall the exact time they were together. Moreover, as with Aldridge, Jernigan's counsel testified that he spoke with Smith, and he did not recall her providing any information that would support an alibi defense. As a result, the trial court was entitled to credit this testimony. *See supra* note 61. Thus, to the extent Jernigan suggests that his trial counsel was ineffective for failing to call Smith as a witness, his claim of error fails. *See supra* note 62.

On appeal, Jernigan contends that his counsel should have investigated Smith's phone call logs, which he presented at the motion-for-new-trial hearing to show that there was at least one unanswered call from Smith's phone to Jernigan's phone during the relevant time period. But whether Jernigan had a missed call during the time when he was allegedly committing an armed robbery is not necessarily exculpatory. Indeed, the State presented evidence that the cell phone was left by the suspects in the abandoned car and testimony that Jernigan misplaced his phone or had missed calls during the robbery could have bolstered the State's case. And Jernigan's counsel testified that if he thought evidence would be more damaging to his client than beneficial, he would not present such evidence. Suffice it to say, Jernigan cannot show that his counsel's alleged failure to investigate the call logs was so patently unreasonable that no competent attorney would have made the same decision under the circumstances. As a result, he cannot establish that his counsel was ineffective in this respect.[65]

---

[65] *See Manner v. State*, 302 Ga. 877, 883 (II) (A) (808 SE2d 681) (2017) ("A decision made for purposes of trial tactics and strategy may form the basis for an ineffective assistance claim only if it was so patently unreasonable that *no competent attorney* would have made it under the circumstances at the time." (punctuation omitted) (emphasis supplied)); *McDuffie v. State*, 298 Ga. 112, 115-16 (2) (779 SE2d 620) (2015) (holding that trial counsel was not ineffective for failing to call a particular witness when his testimony could have been more harmful than helpful);

Lastly, Jernigan argues that his counsel was ineffective for failing to investigate whether Harrell's car had been reported stolen to impeach her testimony that she had not made such a report. And during opening statements, Jernigan's attorney told the jury that Harrell reported her car stolen a few days before the robbery. Indeed, during her testimony, Harrell admitted that she initially lied to police about her car being parked at a certain apartment complex because she was afraid of getting into any trouble. But contrary to trial counsel's representations, Harrell testified that she never reported her car stolen. Even so, Jernigan argues that his counsel should have investigated further to obtain a police report to confirm that Harrell did report her car stolen. Jernigan also asserts that it hurt the strength and credibility of the defense when his counsel made claims that were flatly denied by Harrell. But at the motion-for-new-trial hearing, Jernigan did not present evidence that any further investigation would have revealed that—despite her sworn testimony otherwise—Harrell reported her car stolen a few days before the robbery.[66] Moreover,

*Richardson v. State*, 276 Ga. 548, 552-53 (3) (580 SE2d 224) (2003) (holding that trial counsel was not ineffective for failing to challenge certain expert testimony, especially in light of counsel's pre-trial consultation with an expert who *agreed* with the State's experts).

[66] *See Smith v. State*, 301 Ga. 348, 352 (III) (801 SE2d 18) (2017) ("[I]n order to show prejudice with regard to his counsel's alleged failure to fully investigate the

absent concrete evidence that Harrell's testimony was false, questioning Harrell on the matter would have only served to highlight trial counsel's prior misstatement.[67] As a result, this claim of ineffective assistance is also without merit.

For all these reasons, we affirm Jernigan's convictions.

*Judgment affirmed. Rickman and Brown, JJ., concur.*

---

case and call essential witnesses, a criminal defendant must proffer information on what a thorough investigation would have uncovered . . . .").

[67] *See Sears v. State*, 292 Ga. 64, 70 (5) (b) (734 SE2d 345) (2012) (holding that counsel was not ineffective for failing to object to improper bolstering testimony because a reasonable attorney might have worried that an objection would only draw attention to the testimony).